## BLOCK v NEW ERA CAFE, Inc

Ohio Common Pleas, Hamilton Co

Decided July 29, 1932

Rappaport & Rappaport, Cincinnati, for plaintiff.

Leslie, Herman & Ritchie, Cincinnati, for defendant.

### OPINION

By MATTHEWS, J.

This is an action under favor of §11103-1, GC, by a creditor of Milton Silverglade, to have the defendant declared a trustee and account for certain property transferred to it by Milton Silverglade.

Milton Silverglade owned and operated two restaurants, known as The Hub and The New Era. The defendant is a corporation created by the co-operation of the said Silverglade and a large majority of his creditors for the purpose of taking over the business and assets of said Silverglade under the terms of a certain trust agreement whereby the creditors were to receive certain stock or a part of the dividends upon the corporate stock in lieu of their claims. Property transferred to the corporation consisted of the fixtures, utensils and supplies used in the business and also the good will, leasehold interest in the real estate where the businesses were conducted and other property not used in the business, and perhaps a small stock of cigars, cigarettes and chewing gum located in said stores.

In connection with the restaurant business said Silverglade sold cigarettes, cigars and chewing gum, which his customers carried away with them in the condition in which they were purchased by Silverglade. This business aggregated approximately $400 per week.

Silverglade and his wife were the principal stockholders in another restaurant, known as Colonial Stores, a corporation to which Silverglade sold foodstuffs, which he purchased for it because he had greater credit than it had. These sales averaged $190 per week. The total business done at the two places aggregated about $8,000 per week.

The transfer was made on September 1, 1931, and the petition in this action was filed on October 14, 1931. J. E. Rappaport and The Fountain Square Building, Inc., two other creditors, intervened in this action within ninety days of the transfer. The plaintiff and the intervening creditors introduced evidence in proof of their claims, and also evidence showing that the transfer was not in the ordinary course of trade and in the regular and usual prosecution of the business of the seller. There was also evidence introduced that 95% or more of the creditors approved this transfer, but the evidence clearly showed that there was no attempt made to comply with the Bulk Sales Law, the parties relying on the unanimous consent of the creditors for the validity of their action, but the evidence showed that neither the plaintiff nor the intervening creditors gave their consents.

The sole question presented, therefore, is whether or not the Bulk Sales statute is applicable to this transaction, and if so, to what extent. The Bulk Sales statute of Ohio is found in §11102, et seq., GC. By §11102, GC, it is enacted that:

"The sale, transfer or assignment, in bulk, of any part or the whole of a stock of merchandise, or merchandise and the fixtures pertaining to the conducting of said business, or the sale, transfer or assignment in bulk of the fixtures pertaining to the conducting of said business, otherwise than in the ordinary course of trade and in the regular and usual prosecution of the business of the seller, transferrer or assignor, shall be void as against the creditors of the seller, transferrer, assignor, unless the purchaser, transferee or assignee demands and receives from the seller, transferrer or assignor a written list of names and addresses of the creditors of the seller, transferrer and assignor with the

amount of the indebtedness due or owing to each and certified by the seller, transferrer and assignor, under oath, to be a full, accurate and complete list of his creditors, and of his indebtedness; and unless the purchaser, transferee or assignee shall, at least five (5) days before taking possession of such merchandise, fixtures, or merchandise and fixtures, or paying therefor, notify personally, or by registered mail, every creditor whose name and address appears in said list, or of which he has knowledge, of the proposed sale and of the price, terms and conditions thereof."

It is manifest from the reading of this section that it is not intended to include sales of all kinds of property, nor does it include sales by all persons of the kind of property included in its terms. Stated affirmatively, it only includes sales of specifically described property by a specifically described seller. The fact that it was so limited was the basis of the attack upon its constitutionality, which was decided in the case of Steele, Hopkins & Meredith Co. v Miller, 92 Oh St 115, in which case the court construed the statute, found the classification reasonable and upheld its constitutionality. Discussing the meaning of the statute and the class to which it applied, the court at pages 127 and 128, said:

"We think it clear that there are substantial reasons for the classification made by this statute. It applies equally to all merchants having a stock of merchandise for sale in the usual course of trade, who have creditors. It operates upon such class when there is contemplated a bulk sale of the stock otherwise than in the ordinary course of trade. It relates to all purchasers. It affects all within the class of creditors of such merchants. The necessary results of its operation would be in the interest of honest merchants and of the public welfare, for these are concerned in the prevention of frauds and in the protection of public morals. No reason has been suggested for the extention of the requirements included in the statute under consideration to the owners and purchasers of all personal property. To do so would unnecessarily and unreasonably hinder many transactions which are free from the inherent dangers and mischief intended to be corrected."

The Supreme Court construed this statute in the above language to apply only to merchants having a stock of merchandise

for sale in the usual course of trade selling said stock other than in the usual course.

Now, is a person conducting a restaurant a merchant as to that restaurant? This question has arisen in several jurisdictions and most of the cases on the subject are collected in the annotations to the case of Swift & Company vs Tempelos, 7 A. L. R. 1581 at 1587, and the case of McPartin v. Clarkson, 54 A. L. R. 1535 at 1537 et seq. In the first named case the Supreme Court of North Carolina held, as stated in the syllabus, that:

"The goods and fixtures used in a restaurant conducted on the ordinary plan are not a stock of merchandise within the meaning of the Bulk Sales Law."

There is no substantial difference between the bulk sales laws of North Carolina and Ohio. The Supreme Court of North Carolina reviewed the authorities and reached the conclusion that "stock of merchandise" as used in statute, as stated at page 1584, meant:

"The words 'stock of merchandise' in our statute, are used in the common and ordinary acceptation of those terms, and mean the goods or chattels which a merchant holds for sale, and are eqivalent to 'stock in trade' as ordinarily used and understood among merchants and tradesmen."

After pointing out the difference in the language of the statute of the State of Washington, construed in the case of Plass v. Morgan, 36 Wash. 160, the court at 1585 said:

"The statute was evidently intended to apply to a stock of merchandise, in the sense of a stock of goods which have been bought for resale in a substantially unchanged condition, and not to a stock of provisions on shelves, or in a pantry or storeroom, kept for no other purpose than to supply the tables, and provide meals for patrons and customers of the restauranteur. This is not selling articles kept in a stock, but furnishing meals to those who come for them, at a stated price."

In the annotation to Swift v. Tempelos are collected the cases dealing with sales in bulk of restaurants and this collection shows that the great weight of authorities at that time was that the Bulk Sales statute did not apply to such sales unless

the language was broader than the Ohio statute. Clearly, the Washington statute is broader, and in the view of the court, the Maryland statute is also broader. In McPartin v. Clarkson, supra, the decision of the Supreme Court of Michigan construes the Michigan statute, with reference to which the Supreme Court of Ohio in Steele Co. v. Miller, supra at page 129, said:

"The Ohio statute involved in this litigation is substantially a copy of the Michigan law."

The court held in McPartin v. Clarkson as stated in the syllabus, that:

"One whose sole business is the conducting of a poolroom, may sell his tables without reference to a Bulk Sales Law which relates to a stock of merchandise, or merchandise and fixtures, pertaining to the conduct of the business."

The facts in that case were that the vendor conducted a poolroom and cigar and candy stand, which he sold, together with other personal property, including household goods, without complying with the Bulk Sales Law. The question in the case was as to the validity of the sale insofar as it related to the pool tables. At page 1537, the court said:

"If Cahill's business had been limited to pool, he might have sold his tables without reference to the Bulk Sales Law, as they would be neither merchandise nor fixtures within the meaning of the act. Did the fact that he also conducted in the pool room a tobacco and candy stand make the pool tables fixtures under the Act? It did not. It may be that tobacco and candy are usually sold in pool rooms. But pool tables are not such chattels as tobacco and candy merchants or either of them 'usually possess and annex to the premises occupied by them, to enable them the better to store, handle and display their goods and wares.' The sale of the merchandise, tobacco, and candy may have been void as to creditors because of the Bulk Sales Law, but the sale of the tables was not for that reason invalid."

The annotation to McPartin v Clarkson is a supplement to the annotation to Swift & Co v Tempelos. It shows that the question of the applicability of the Bulk Sales statute to restaurants had come under review by the Supreme Courts of six of the states and that they had uniformly held that the statutes were inapplicable.

In view of the construction which our Supreme Court placed upon our Bulk Sales statute in Steele Co v Miller, supra, and in further view of what the court deems to be the overwhelming preponderance of the authorities in other states, the conclusion is reached that the supplies which the owner of a restaurant has on hand to be used by him in serving his customers in the restaurant, do not constitute a stock of merchandise within the meaning of §11102, GC, that a restauranteur as such is not a merchant, and that therefore the sale of the supplies used, or to be used, in connection with the restaurant, and the fixtures and utensils so used, does not come within the terms of the Bulk Sales Law, and therefore is not invalid because of the failure to comply with its terms.

It seems equally clear to the court that the same person may be engaged in more than one trade or business, and that in one capacity a statute may be applicable to him and in another capacity inapplicable. This was pointed out in the case of McPartin v Clarkson, supra, and the court is of the opinion that the distinction there pointed out is sound, and while the cigar, cigarette and chewing gum counter did a small business as compared to the aggregate, still, without that comparison, it was substantial. Regardless of that, however, the court cannot escape the conclusion that insofar as Mr. Silverglade was engaged in the sale of cigars, cigarettes and chewing gum to his customers, he was a merchant selling merchandise, and that whatever stock of such merchandise was on hand, it could not be sold otherwise than in the usual course of trade except upon compliance with the provisions of the Bulk Sales Law, and further, that this limitation would apply to such fixtures as were used in connection with that branch of his business.

The fact that Silverglade extended his credit to Colonial Stores by purchasing foodstuffs for it did not in the opinion of the court have the effect of metamorphosing his restaurant business into a mercantile business.

Counsel has called the court's attention to the case of **Schaine v Schaeffer, 15 N P (N S) 599,** as authority to the effect that the Bulk Sales Law applies to the sale of

the restaurant. The question considered in that case was the constitutionality of the Bulk Sales statute. While the sale was that of a restaurant, that fact was not considered in the opinion. It was assumed that if the statute was constitutional it applied to the sale under consideration. Furthermore, the case was decided before the decision of the Supreme Court in Steele Co v Miller, supra, in which the Supreme Court, as this court views it, limited the statute as to exclude restauranteurs making sales of restaurant property.

The conclusion of the court is that the sale under consideration is valid in all respects, excepting as to the stock of cigars, cigarettes and chewing gum and the fixtures specifically used in connection with their sale.

A decree may be prepared in accordance with this opinion.